UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON NELSON,
JAMES STRAIT,

      Plaintiffs,

                Case Number 03-10116-BC
v.                Honorable David M. Lawson

SCOTT GOWDY,

      Defendant.
_____/

### *CORRECTED* ORDER ADOPTING RECOMMENDATION OF MAGISTRATE JUDGE, OVERRULING DEFENDANT'S OBJECTIONS, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REFERRING CASE TO MAGISTRATE JUDGE FOR FURTHER PRETRIAL MANAGEMENT AND APPOINTMENT OF COUNSEL

  The order filed by this Court on August 15, 2006 adopting the magistrate judge's report and recommendation is hereby deleted and replaced by this order.

  The plaintiffs in this case, prisoners incarcerated at the Gus Harrison Correctional facility in Adrian, Michigan, filed a complaint alleging that they were retaliated against by defendant Scott Gowdy, a corrections officer, because plaintiff Strait filed grievances against him and plaintiff Nelson assisted Strait in so doing. They claim violations of their First Amendment rights under 42 U.S.C. § 1983. On September 4, 2003, this Court referred the case to Magistrate Judge Charles E. Binder to conduct all pretrial proceedings. Thereafter, the defendant filed a motion for summary judgment, to which the plaintiffs responded. On August 31, 2004, the magistrate judge issued a report recommending that the Court deny the defendant's motion for summary judgment. The defendant filed timely objections to the report and recommendation, to which the plaintiffs also have responded, and the matter is before the Court for a *de novo* review of the record in light of the parties' submissions.

In his objections, the defendant argues that there is no First Amendment protection for prisoners who assist other prisoners in writing grievances to prison officials, the prison otherwise offered assistance in submitting grievances, certain employment actions taken by the prison with respect to the defendant improperly were interpreted by the magistrate judge as suggesting guilt, the plaintiffs failed to present sufficient evidence of adverse action to make out a retaliation claim, the magistrate judge erred in opining that handwriting on a note could have been penned by the defendant, and qualified immunity precludes suit under the circumstances. The Court now finds that the defendant's objections lack merit and issues of fact preclude summary judgment in this case. The Court, therefore, will overrule the defendant's objections, adopt the magistrate judge's recommendation, deny the defendant's motion for summary judgment, and refer the matter to the magistrate judge for appointment of counsel for the plaintiffs and further pretrial proceedings.

I.

The facts of the case are set forth in the magistrate judge's report. Neither party takes issue with that portion of the report. The Court finds that the magistrate judge's recitation faithfully tracks the record as presented to him by the parties, and therefore the Court adopts it here.

II.

When adjudicating a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court views the evidence and "'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). However, once the moving party has made the "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the nonmoving party cannot rest on her pleadings but must

identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*, 477 U.S. at 324; *Hall v. Tollett*, 128 F.3d 418, 421-22 (6th Cir. 1997). The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). She must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Applying this standard in its *de novo* review, the Court finds that the defendant has not met his burden.

A.

The defendant first objects to the magistrate judge's conclusion that there is a viable First Amendment retaliation claim in this case. The crux of his argument is that a prisoner who assists another prisoner in preparing a *grievance* as opposed to a *lawsuit* cannot claim retaliation if prison officials thwart the assisting prisoner's efforts. The defendant concedes that prison officials are not permitted to prevent a prisoner from rendering legal aid to a fellow prisoner if no reasonable alternatives are available. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 383 (6th Cir. 1999); *Gibbs v. Hopkins*, 10 F.3d 373, 375 (6th Cir. 1993). However, such prohibitions depend, in the defendant's view, on whether the assistance is for the purpose of preparing a lawsuit.

That contention is unavailing. The defendant is correct that *Thaddeus-X* and *Gibbs* both involved instances of assistance for preparing lawsuits. Yet nothing in those cases suggests that

legal assistance is limited only to legal actions then pending in a court. In *Thaddeus-X*, the Sixth Circuit framed the inquiry as follows:

> It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. *Rather, a jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court.* Thus, only if X's assistance is necessary to vindicate Bell's right of access to the courts can X, too, state a claim of retaliation.

*Thaddeus-X*, 175 F.3d at 395 (internal citations and quotation marks omitted) (emphasis added). Similarly, in *Gibbs* the court of appeals reasoned that courts have recognized that prisoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts. *Gibbs*, 10 F.3d at 378.

In this case, the defendant has cited no law in support of his proposition that assistance in filing a lawsuit is materially different from a grievance. The case law speaks clearly in terms of legal assistance, not lawsuits and grievances as analytic distinctions. Further, in a prisoner civil rights case, exhaustion of administrative remedies is a predicate to bringing suit in federal court. *See* 42 U.S.C. § 1997e(a) (stating that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted"). Recently, that requirement has been interpreted narrowly, requiring that prisoners exhaust remedies with respect to all claims and all defendants or face dismissal of their suit. *Jones Bey v. Johnson*, 407 F.3d 801, 807 (6th Cir. 2005). The Supreme Court has held that the exhaustion requirement carries with it the obligation to "properly exhaust" administrative remedies. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). In order to meet this strict requirement, Michigan prisoners must

file grievances at three administrative levels. *See* MDOC Policy Directive 03.02.130. Assistance in submitting a grievance is a logical and essential step to obtaining access to the courts. The distinction the defendant makes is not jurisprudentially significant. The Court therefore will overrule the defendant's first objection.

B.

The defendant next claims that plaintiff Strait had reasonable alternatives available to him and therefore did not need the assistance of plaintiff Nelson in filing grievances. For instance, the defendant explains, plaintiff Strait could have sought assistance from prison staff as provided for in the MDOC grievance policy. Further, the defendant contends that there are no allegations that Strait was unable to write a grievance or that he sought assistance from the staff in writing a grievance. Rather, Strait's alleged shortcoming was that he lacked knowledge of relevant department policy and state or federal law to perfect an administrative grievance. Because his grievance did not have to be perfect or even refer to policies or statutes, the defendant insists that plaintiff Strait, who possessed a GED, surely could have filed the grievance on his own or with staff help.

This argument was never presented to the magistrate judge in the first place. Consequently, there has been no factual development by the parties as to what reasonable alternatives might have been available to plaintiff Strait. The defendant waived this argument by failing to present it to the magistrate judge. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (holding that "the Commissioner cannot rely on any waiver by Heston to foreclose consideration of her claims on the merits, because the Commission failed to bring Heston's waiver to the attention of the Magistrate Judge"). Whether "reasonable" alternatives exist requires a factual inquiry, not

appropriately resolved on a motion for summary judgment. Although staff may have been able to help plaintiff Strait with his grievances, the plaintiffs present evidence that, when viewed in the light most favorable to them, suggests prison officials attempted to obstruct access to judicial review. As a matter of law, the fact that help was available and the plaintiff possessed a GED does not mean reasonable alternatives were available in this case. The Court therefore finds that this objection lacks merit.

C.

The defendant next takes issue with the magistrate judge's suggestion the defendant's actions demonstrated guilt. The defendant maintains that there is no factual basis indicating that he gave up his previous job title for that of a corrections officer because of a disciplinary conference involving plaintiff Nelson's complaint that the defendant destroyed Nelson's legal materials. Such an inference is improper, according to the defendant.

> The challenged portion of the magistrate judge's report and recommendation reads:
>
> Attached to Defendant's motion is an MDOC "Notice of Disciplinary Conference" stating that Defendant Gowdy was alleged to have violated departmental work rules by destroying prisoner Nelson's personal items during a cell search as well as by leaving behind the written message "Try writing these and see the shakedowns" on a grievance form, and that hearing on these allegations would take place on February 4, 2003.
>     Also attached to the motion is a memorandum setting forth the results of Defendant Gowdy's disciplinary conference, which is dated February 13, 2003. The memo states, "It was determined your behavior in Disciplinary Case #DS-02-29-0002-03 did not rise to the level of a rule violation. Therefore, the case has been dismissed." Notwithstanding this result, Defendant Gowdy reports in his affidavit that as of March 2003, he moved to third shift, gave up his RUO status, which was a level E-10 position, and since then has been "working at a C/O [Correction Officer] E-0 level"
> . . .
> [T]hat Defendant's employment changed from a level 10 classification shortly thereafter, supports the conclusion that Plaintiffs have met their burden in establishing for purposes of this summary judgment motion that Defendant's actions

-6-

> with regard to Plaintiffs Nelson and Straight were motivated at least in part by the filing of grievances.

R & R at 13, 20.

The defendant states that in truth he was demoted for verbal insubordination because of an unrelated incident. He points to his deposition in another case to make the point. Plainly, this information was not before the magistrate judge. On its face, such evidence suggests, albeit circumstantially, that the defendant was punished for wrongdoing. Without an explanation in the record as to the true reason for demotion and in light of the well-established summary judgment rule that the Court draw all reasonable inferences in favor of the non-moving party, *Anderson*, 477 U.S. at 251-52, the magistrate judge did not make an erroneous conclusion.

### D.

The defendant next argues that the plaintiffs failed to present sufficient evidence of adverse action to survive summary judgment. According to the defendant, the magistrate judge improperly relied only on the plaintiffs' allegations of wrongdoing. For example, the defendant states that there is no evidence that the shakedowns were anything other than routine; no evidence to support the claim of name calling, which even if it did occur did not give raise to a constitutional violation; no evidence to suggest that the defendant damaged personal property; no evidence indicating that the defendant wrote a threatening note on a grievance form, tore it up, and left it in Nelson's room; no evidence to suggest that Nelson was falsely labeled a homosexual; and no evidence to prove that King was transferred for only one day. The defendant's affidavit confirms these contentions, he asserts.

This objection is similar to the defendant's more general challenge that the magistrate judge relied on cases employing a dismissal as opposed to a summary judgment standard of review in

assessing adversity. *See Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Hall v. Sutton*, 755 F.2d 786, 787-88 (11th Cir. 1985); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). The correct standard, he maintains, requires the plaintiffs to come forward with affirmative facts, not just allegations.

The defendant's argument suggests a misunderstanding of the summary judgment standard, and he conflates the notion of a procedural standard with a substantive legal standard. Procedurally, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Substantively, a prisoner must present evidence giving rise to a genuine issue of material fact on three elements in a retaliation claim: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. At this stage, it appears the defendant does not contest that the plaintiffs meet the first and third elements. Thus, in order to withstand summary judgment, the plaintiffs must demonstrate by designating specific facts in affidavits, depositions, or other factual material that a jury could reasonably find that an adverse action was taken against the plaintiffs.

The question of adversity generally is one for the jury. In *Bell*, 308 F.3d at 594, decided at the summary judgment stage of litigation, the Sixth Circuit explained that

> an official action will be deemed "adverse" only if it could deter a person of ordinary firmness from the exercise of the right at stake. Although the effect on freedom of speech need not be great in order to be actionable, we explained that it would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for *any* adverse action no matter how minor. Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact.
>
> Our discussion of the "adverse action" requirement in *Thaddeus-X* makes it clear that, in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law . . . . Thus, unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury.

*Id.* at 603 (internal citations and quotation marks omitted).

The defendant argues that the evidence proffered by the plaintiffs should be disregarded because they are mere allegations that rest on the hope the finder of fact will disbelieve the denial of a disputed fact. The defendant's argument misses the mark.

The plaintiffs have pointed to proper evidence demonstrating a genuine issue of material fact. The magistrate judge reasoned:

> In this case, the adverse actions include false misconducts, retaliatory shakedowns, destruction of personal property, and more, as previously discussed. Moreover, the documentary evidence and the inferences that can be drawn therefrom, when viewed in the light most favorable to Plaintiffs, could be found to support the allegations . . . . I therefore suggest that the claimed retaliatory actions in this case are not "inconsequential," and that Defendant is not entitled to summary judgment on the basis that Plaintiffs have presented insufficient evidence on whether Defendant's actions could deter a person of ordinary firmness from engaging in protected conduct.

R & R at 18.

A cursory review of plaintiffs' supporting documents – that is, proper evidence in which specific facts in affidavits, depositions, or other factual material are designated – reveals evidence of adverse action. Exhibit A to the plaintiffs' response brief, for example, is a memorandum from Resident Unit Manager Charles Ingram to King, which states, in relevant part: "It appears to me the CSJ-363 (evaluation) was an act of retaliation by RUO Gowdy." There is evidence that the defendant conducted shakedowns of the plaintiffs' cells, and although shakedowns were part of his job duties, such shakedowns were undertaken because the plaintiffs were engaged in writing grievances. *See* Pl.s' Resp. Br. Ex. G, Memorandum (Oct. 3, 2002) (noting that "RUO Gown did in fact do a shake down of inmate Nelson's cell" and "a blank grievance form with 'Try writing these [grievances] and see the shakedowns'" was found, although a handwriting comparison was "inconclusive").

The defendant's argument appears to be premised on his belief that the evidence he proffers, although in conflict with the plaintiffs', is somehow superior. However, as the magistrate judge pointed out, it is the defendant who rests primarily on denials. The magistrate judge, therefore,

relied on the correct legal standard and appropriately determined that issues of fact preclude summary judgment in this case.

E.

The defendant next claims that the magistrate judge improperly advocated for the plaintiffs by imposing his own opinion about the author of a threat, handwritten on a grievance form, found in plaintiff Nelson's cell following the shakedown. After reviewing the handwriting on the note and comparing it to another document, submitted as an attachment, written by the defendant, the magistrate judge suggested that the defendant could have been the source of both writings:

> Defendant Gowdy admits conducting the shakedown, but denies writing the threat or leaving it in the cell. The MDOC's investigation states that "[t]he writing on the Grievance has been compared to other writings of RUO Gowdy and is inconclusive." Plaintiffs have attached as Exhibit H to their response both the threatening note and the NOI which was hand-written by Defendant Gowdy on the same day the note was found. Although I do not profess to be an expert in handwriting comparisons, after examining the handwritten printing on the two documents, I find that it is not only possible but probable that a jury could find that the words "Try writing these and see the shakedowns" were written by Defendant Gowdy. When one compares the capital "T"s, the lower case "y"s and the word "the" which appears in both documents, I suggest that a very real likelihood exists for a jury to find that they are identical.

R & R at 19.

Although the magistrate judge's opinion on the matter is not conclusive (he admittedly is not an expert), a fact finder is free to view the evidence and draw its own conclusion. The Court need find only that *a* reasonable fact finder *could* conclude that the evidence supports the plaintiffs' contention. *See* Fed. R. Evid. 104(b); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1410-11 (2d Cir. 1996). Moreover, the magistrate judge's reference to the handwriting comparison does not change the fact that the plaintiffs proffered record evidence to rebut the defendant's motion for summary judgment. Even assuming that a lay opinion on handwriting samples constitutes impermissible

-11-

advocacy, *see Guarino v. Brookfield Twp Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) (reasoning that "it . . . [is] utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the . . . party [opposing a motion for summary judgment]: seeking out facts, developing legal theories, and finding ways to defeat the motion . . . . [Rule 56] requires the non-moving party to do its own work, and to assist the trial court by responding to the motion"), this Court's *de novo* review of the record evidence corrects any alleged bias.

Although the magistrate judge compared the handwriting samples and offered his lay opinion, he simply highlighted a potential question of fact for the jury's determination at trial: whether defendant Gowdy wrote the threat in retaliation for the plaintiffs' attempts to seek legal redress. Because this Court independently reviews the record evidence and finds that fact questions preclude summary judgment notwithstanding the magistrate judge's gloss on the evidence, any resulting error is of no consequence.

F.

Finally, the defendant claims that the magistrate judge erred in denying him qualified immunity. He concedes that there is a clearly established right to be free from retaliation in the abstract, but maintains that such an abstract right is insufficient to overcome the doctrine of qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For the doctrine of qualified immunity to give way, the contours of the right must be clear in light of the specific facts facing the officer. *Ibid.*

The magistrate judge concluded that there is a clearly established right not to be retaliated against for filing grievances and because there were factual issues as to whether the defendant committed many of the alleged retaliatory acts, the defendant was not entitled to summary judgment.

The defendant believes this conclusion is incorrect because he acted in good faith in response to what he believed were rule infractions. A majority of the time, the defendant states, his decisions on the application of prison rules were upheld, although at times he was overruled for failing to follow technicalities. In other words, the defendant concludes that the facts disclose a reasonable basis for his actions. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194 (2001).

The Supreme Court has described the doctrine of qualified immunity as "an entitlement not to stand trial or face the other burdens of litigation," and is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The analysis unfolds in two steps, the second of which is implicated by the defendant's objection. First, the court must determine whether a constitutional violation has occurred. *Saucier*, 533 U.S. at 201. Second, if a constitutional violation has occurred, the court then determines whether the constitutional right that was violated was 'clearly established' at the time of the violation. *Ibid.* Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). However, if qualified immunity is raised at the summary judgment stage, the Court must view the evidence in the light most favorable to the plaintiffs and deny the motion if the facts so viewed clearly establish a constitutional violation. *See, e.g.*, *Flagner v. Wilkinson*, 241 F.3d 475, 481 (stating that "[s]ummary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights").

As noted, the defendant does not contest the constitutional right to be from retaliation for filing grievances and, for purposes of this objection only, concedes, as he must, that a constitutional violation has occurred. The basis of his objection centers on his assertion that "there was *never any finding* by supervisory staff or during the disciplinary conference that defendant Gowdy acted with retaliatory intent. The evidence here establishes that officer Gowdy acted with good-faith to enforce the prison's rules as he understood them." Def.'s Objs at 14. He then reiterates his belief that the plaintiffs rely on bald assertions. Not only does the defendant fail to support his argument with citation to the record, he ignores the evidence presented by the plaintiffs that the defendant *did* act with retaliatory intent. Although a jury ultimately might believe the defendant's proffered evidence – which admittedly conflicts with the plaintiffs' – a fact finder could believe just as well that the defendant's conduct was malicious and intentionally vindictive. The defendant has not cited legal support for the proposition that his supervisors' inability to find a retaliatory intent is conclusive of the qualified-immunity inquiry. The defendant's objection, therefore, lacks merit.

### III.

After conducting a *de novo* review of the record in light of the defendant's objections, the Court is satisfied that his motion for summary judgment should be denied. The magistrate judge's observation comparing the handwriting samples does not constitute fact-finding or impermissible advocacy; rather it highlights the existence of a fact question that must be resolved by a jury.

Accordingly, it is **ORDERED** that the magistrate judge's recommendation is **ADOPTED** [dkt # 17], the defendant's objections are **OVERRULED**, and the defendant's motion for summary judgment [dkt # 13] is **DENIED**.

It is further **ORDERED** that the matter is referred to the magistrate judge for appointment of counsel and to conduct any additional pretrial matters.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: September 11, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 11, 2006.

s/Felicia Moses<br>
Case Manager

---